IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO PASQUINI | : | CIVIL ACTION NO: |
|    Plaintiff, | : | 3:03 CV 141(PCD) |
| | : | |
| | : | |
| DESCO CORPORATION; DESCO | : | |
| CORPORATION LONG TERM DISABILITY | : | July 1, 2004 |
| INCOME PLAN; UNUM LIFE INSURANCE | | |
| COMPANY | : | |
|    Defendants. | : | |

**PLAINTIFF'S SUGGESTED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

In support of Plaintiff's Motion for Judgment, plaintiff submits the following suggested findings of fact and conclusions of law.

Findings of Fact

1. Desco Corporation sponsored the Desco Corporation Long Term Disability Plan (the Plan") in which Plaintiff Mario Pasquini ("Mr. Pasquini") was a participant through an insurance policy issued by Unum Life Insurance Company ("Unum").

2. Unum administers the Plan and pays benefits under the Plan out of its own resources.  Stipulation of Fact D, Rule 26(f) Report.

3. Plaintiff exhausted all administrative remedies under the Plan.  Rule 26 Report, Stipulation of Fact H.

4. MP experiences afternoon somnolence and fatigue that is caused by his stroke and medication regimen to control hypertension, and may be contributed to by sleep apnea.

Administrative Record, filed as an exhibit to Defendant's Motion for Judgment (hereinafter, "AR").

5. After several hours of physical or mental activity, MP is unable to function physically and mentally as a result of his afternoon somnolence and fatigue unless he sleeps from one to two hours.  AR 120, 122.

6. Dr. Walter Kernan is MP's primary treating physician, and is "highly credentialed" in the area of hypertension and stroke.  AR 14.

7. MP has the capacity to work part-time if his need for afternoon sleep can be accommodated.  AR 218, 217.

8. So long as MP needs an afternoon nap, he has no work capacity.  AR 613.

9. MP was ordered by his physicians to attempt to increase his aerobic capacity by exercising.  AR 152.

10. Unum identified no part-time positions that MP is reasonably fitted by education, training or experience to any "gainful occupation," defined by the relevant policy as "an occupation that is or can be expected to provide you with an income at least equal to 60%" of his pre-disability income.  AR 477.

11. Dr. Stephen Huot, a specialist in hypertension and its treatment, determined that MP's afternoon somnolence and fatigue are caused by MP's stroke and medication regimen. AR 175.

12. Unum approved benefits and found that MP's restrictions were reasonable and supported by objective medical evidence (AR 123, 196, 240, 328 and 377) with knowledge that MP could perform the following activities:

- He tried to take a walk for several miles every day (AR 113, AR 157, AR 237);
- He would do occasional yard work, but would have to rest afterwards (AR 236);
- He went out on his boat (AR 234, 401, 611); and
- He could drive for up to about forty-five minutes to an hour before needing a nap.  AR 112, 115 – 110.
- Occasionally, he could skip his nap.

13. MP consistently disclosed all of these activities to Unum (AR 113, AR 433), and Unum approved benefits with knowledge of these activities.

14. MP's physicians regularly altered MP's medications in an attempt to reduce the side effects of the medication, but were unable to do so.  AR 289, 323.

15. The surveillance conducted by Unum disclosed no activities by MP that did not already know.  AR 422 et seq.

16. The surveillance disclosed no activities by MP that were inconsistent with his need to sleep in the afternoon after working several hours.

17. The physical abilities disclosed by the video, including the light yard work and his activities in putting his sailboat under sail, were consistent with the physical limitations

Dr. Kernan had told Unum about prior to Unum's decision that MP's restrictions were reasonable and prevented him from performing more than part-tine work.  AR 151, AR 412.

18. When Unum made the decision in August 2001 to deny benefits, it knew nothing different that it knew when it had approved benefits.

19. To satisfy the "any occupation" standard for disability, MP must be able to perform a "gainful occupation" to which he is reasonably fitted by education, training or experience. AR 567

20. A "gainful occupation" is defined as one that is or is expected to provide him with an income at least equal to 60% of his pre-disability earnings within 12 months of his return to work.  AR 566.

21. Unum failed to identify any gainful occupations for MP that would allow him to work part-time.

22. Unum has a potential conflict of interest because it is responsible for both determining eligibility for benefits and paying benefits.

23.  Unum used the same doctor to approve the initial denial and to review the claim on appeal, and its decision to reverse its decision that MP had no work capacity.  AR 444, AR 528.

24. Dr. Daniel Krell is a family practice physicians whose experience is limited to working in rural medical clinics and conducted medical reviews for Unum.  He has no demonstrated expertise in treating stoke victims, hypertensives, or patients with sleep

disorders.  Curriculum Vita of Dr. Daniel Krell, attached as Exhibit A to Memorandum in Support of Plaintiff's Motion for Judgment.

25. Dr. Krell stated no principled medical reason for his disagreement with the opinions of MP's treating physicians that MP was disabled by afternoon somnolence.  AR 528.

26. Dr. Krell's review of the file in connection with MP's appeal of the denial was cursory, as shown by the fact that he stated that there was no evidence in the record that MP fell asleep while driving, even though Dr. Kernan had stated that MP had fallen asleep while driving several times.  AR 122.

27. Dr. Krell did not have a reasonable basis for concluding that MP's use of nasal continuous positive airway pressure ("CPAP") would cause MP to no longer require an afternoon nap after several hours of work.

28.  Unum decided two years prior to the beginning of the "any occupation" standard that it would deny benefits at that time so it could pay only a portion of its liability, even though it had concluded that MP's condition was unlikely to change and that his restrictions left him with no work capacity.  AR 240.

29. Unum never addressed the fact that the Social Security Administration had found MP to be totally disabled.

Suggested Conclusions of Law

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., and this court's jurisdiction is based on 29 U.S.C. § 1132(e)(1). Rule 26(f) Report, Stipulation of Fact A.

2. The plan at issue is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). Rule 26(f) Report, Stipulation of Fact C.

3. Unum is the appropriate fiduciary, and is liable for any judgment entered in this case.

4. The language of the Plan is sufficient to reserve to Unum the discretion to interpret the Plan.

5. The following establishes that Unum was affected by its financial conflict of interest:

    a. Unum used the same doctor to make the initial decision to deny benefits and to conduct the review of the denial on appeal;

    b. Unum ignored the Social Security Administration's finding that MP was totally disabled;

    c. Two years prior to the end of the "own occupation" standard, Unum decided to deny MP benefits, no matter what his medical condition or vocational ability was at the time.

    d. Unum changed its opinion that MP's restrictions were reasonable, justified by objective medical evidence, and meant that he had no work capacity without receiving any new information that would justify its change of opinion.

6. Because Unum was affected by the financial conflict of interest resulting from serving as the plan administrator and the source for payment of any benefits, the Court should apply a less-deferential version of the arbitrary and capricious review.

7. Under a less deferential version of the arbitrary and capricious review, Unum's decision to discontinue MP's benefits was arbitrary and capricious.

8. Even without applying a less-deferential version of the arbitrary and capricious review, Unum's decision to discontinue MP's benefits was arbitrary and capricious.

9. The video surveillance is not substantial evidence supporting the denial of benefits because it does not show any activity inconsistent with MP's restrictions and limitations.

10. The Transferable Skills Analysis is not substantial evidence supporting the benefit denial since it is based on the erroneous conclusion that the video surveillance establishes that MP has the capacity to work full time and that his claimed need to sleep after several hours of work is false. AR 477.

11. Dr. Krell's medical file review is not substantial evidence supporting the benefit denial for the following reasons:

   a. Dr. Krell's opinion was based on erroneous facts, in that he concluded that the video surveillance showed that MP could work full-time, even though the video did not support this conclusion;

   b. Dr. Krell did not state any medical basis for rejecting the opinions of MP's treating physicians;

  c. Dr. Krell is not qualified to conduct a medical review of a case involving as complicated issues of medical causation as are present in this case.

  d. Dr. Krell was reviewing his own decision on appeal. The fact that the decision was upheld on appeal means little when the same physician who made the original decision reviews the file.

12. The change in the disability standard from "own occupation" to "any occupation" was is not material to the denial, since Unum failed to identify any "gainful occupation" that MP could perform that would allow him to sleep in the afternoon after working several hours.

13. Unum failure to even address the Social Security Administration's finding of disability further supports the holding that Unum's benefit denial was arbitrary and capricious.

14. Ordering payment of benefits is appropriate relief for Unum's wrongful denial of benefits.

15. Unum's decision to discontinue benefits was in bad faith, and Unum is highly culpable because of the dearth of support in the record for its decision that MP's restrictions and limitations were false.

16. Unum is financially able to satisfy a fee award.

17. An award of fees will deter Unum in the future from denying claims without an adequate factual basis.

18. Unum has no credible basis to discontinue plaintiff's benefits, and so the relative merits of the parties' positions strongly inclines to the plaintiff.

19. Other participants in the Plan are benefited by plaintiff's suit, since Unum may be deterred in the future from denying claims without justification.

20. Plaintiff is entitled to recover his reasonable attorneys' fees and costs.

21. Plaintiff is entitled to prejudgment interest on the wrongfully withheld benefits.

        PLAINTIFF

        By: _____
        David S. Rintoul (ct# 08456)
        BROWN, PAINDIRIS & SCOTT, LLP
        2252 Main Street
        Glastonbury, CT 06033
        (860) 659-0700

## **CERTIFICATION**

The undersigned hereby certifies that the above motion was served by first class mail, postage pre-paid on July 1, 2004 to:

Alexander Schwartz
3695 Post Road
P.O. Box 701
Southport CT 06890

David S. Rintoul