## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MARIO PASQUINI     :
   Plaintiff,    :
         :  3:03CV 141 (PCD)
 v.        :
         :
DESCO CORPORATION; DESCO  :
CORPORATION LONG TERM DISABILITY :
INCOME PLAN; UNUM LIFE INSURANCE :
COMPANY OF AMERICA   :
   Defendant   :  FEBRUARY 9, 2003

### DEFENDANTS' PROPOSED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

#### Proposed Findings of Fact     SOURCE[1]

1. Unum issued Group Long Term Disability Policy No. 357616-001 to plaintiff's employer, Desco Corporation.

2. Unum received plaintiff's claim for benefits on 5/29/98. In his application, plaintiff indicated that his last day of work was 5/22/98. 1-2

3. Unum approved plaintiff's application for short term disability benefits effective 10/30/98. 8-9

---

[1] Numerical citations are to the Administrative Record prepared and compiled below. Unum is filling a copy of the 657 page record, along with compact discs depicting video-recorded surveillance, contemporaneously with its Motion for Judgment on the Administrative Record.

4.  Dr. Walter Kernan completed a Short term Disability Attending          59
    Physician's statement on April 27, 1998 and provided it to Unum.
    In that statement, Dr. Kernan stated that plaintiff's primary
    diagnosis was day-time somnolence. His secondary diagnosis was
    hypertension.  Those diagnoses were supported by objective
    findings of  hypertension and overweight, with subjective symptoms
    of day-time somnolence, muscle fatigability.  Kernan indicated that
    patient had been treated intermittently for the symptoms since
    2/17/96. He provided restrictions and limitations of no long-distance
    driving and indicated plaintiff had mental and physical impairments
    of day-time somnolence and muscle fatigability.

5.  Plaintiff completed a Short Term Disability Statement on 5/5/98.  In    60
    it, plaintiff stated that he was a Regional Sales Manager; that his
    duties were to "travel northeast region selling ATC, digiter, West
    Conn Product Lines 2 OEMs and manage distributors throughout
    region."  He stated he first treated with Dr. Kernan on 6/29/96 for
    treatment for hypertension, atrial fibrillation, high fatigue and
    drowsiness, and that his doctor has advised restriction and
    limitations of "no long-term driving/minimal traveling."

6.  Plaintiff's employer provided a Short Term Disability Employer          61
    Statement.  Gerald Dittmann stated that plaintiff stopped working
    because plaintiff said he had high blood pressure and was affected
    by the medication taking to control it. Dittman said plaintiff claims
    he could not travel or drive a car while on medication.

7.  Florence Aliberti, a registered nurse, reviewed plaintiff's file on     83-84
    7/31/98.  She observed:

    12/18/97: Insured admitted to hospital for irregular
    heartbeat....."01/27/98: Seen in follow-up for fatigue. Was found to
    have severely/elevated blood pressure and follow-up stress test

2

reported revealed severe elevation on treadmill testing up to 240/125 at peak. Claims to be more fatigued on beta-blocker and has switched to taking it at night. BP at this visit 160/100 and weight at 259 pounds....12/26/98: Insured continues to complain about fatigue after work.  Nurse Aliberti concluded that:

"Insured's primary reason for impairment appears to be fatigue. A[ttending] P[hysician] mentions depression, side effect of HTN (hypertensive) meds and lifestyle issues as potential etiology. Insured however has been on HTN meds for some time. There is also a question of relationship between fatigue and stroke. However, his stroke occurred several months prior. We need some clarification and copies of his sleep study and psychiatric evaluation to better understand what his medical status is. We will right to AP and attempt to clarify."

8.  On 7/31/98 Nurse Aliberti wrote to plaintiff's attending physician, Dr. Kernan, requesting that he provide answers to several questions she posed about plaintiff's medical condition, care and treatment.

9.  On 8/25/98, plaintiff's employer provided Unum with a Job Analysis of plaintiff's position as Product Manager at DESCO.  Gerry Dittman wrote that the material job tasks were "working from a home-based office, plans and organizes an assigned product line/s from conceptical [sic] stages through product life to optimize profit and meet corporate objectives."  The material job tasks were "communicates by phone with potential and existing customers–travels to meet with distributors, reps and OEM customers throughout assigned territory–communicates with co-workers at manufacturing site to coordinate product development–operates office from home: phone, fax, copy, etc. Secondary tasks–produces monthly and other written reports as needed."  Dittman said that during a day, plaintiff would stand 1 hour, walk 1 hour, and sit 6 hours.

83-84

87-88

104-109

3

10.    On August 7, 1998 plaintiff spoke with Tricia Fornier, a Disability        110-115
       Benefit Specialist at Unum.  In part, plaintiff told her that:

       "Had a hospital stay in 12/97 for atrial fibrillation. He was also being
       treated for HTN (hypertension). AP felt that because HTN was not
       treated properly that 12/97 incident occurred. They changed him to
       beta-blockers. He started feeling a "heavy fatigue". He could not
       drive the car – salesman–without someone with him. He has to
       travel. 4 out of 5 prescriptions he is taking has [sic] fatigue as a side
       effect. They ran tests to determine that sleep apnea was applicable.
       He cannot be in the car more than an hour without falling asleep.
       They are still doing tests. He will see a specialist at the end of
       August. They will try to determine a correlation between fatigue and
       cause–is it anything other than side-effect of meds."

       Plaintiff indicated the following restrictions and limitations: "long-
       distance driving.  'I can sit and work.' Walk for a mile or two and
       stop for 15 minutes. If he tries to get up again, he is extremely
       fatigued and can't do it. Same thing with car. If he drives a short
       period of time, he can't get out of car. Looks like a little
       man–stooped over. Takes 15-20 minutes to work it out.

       Plaintiff indicated the following activities of daily living: "Walks 3-4
       miles per day to improve stamina. Gets up 7:30-8:00am. Does
       computer work–research. Corresponds with Mexico. Handles
       phone calls for work. Feels good in a.m. Gets more fatigued as day
       goes on. Typically takes a nap in late afternoon–for and hour to an
       hour and a half. Normally 6 hours of sleep was enough for him.
       Goes to bed around 10:30."

       Plaintiff told Unum that he has another long term disability policy
       with Travelers "of $20,000/yr max."

4

11.   Unum received a sleep study dated 7/2/98 that was conducted on          116-118
      plaintiff by Gaylord/New Haven Sleep Disorders Center.  The sleep
      study noted that plaintiff's chief complaint was daytime sleepiness
      and fatigue.

      In the report, Dr. Richard Makover provided the following
      impressions and recommendations:

      1)    The patient does not have obstructive sleep apnea. His
            respiratory disturbance index of 3.1 is well below the
            threshold of 5 which would qualify him for his diagnosis.

      2)    His daytime sleepiness seems most clearly explained by his
            sensitivity to sedating medications, especially the use of
            beta-blockers. Although control of his hypertension is
            paramount, if he can avoid the use of beta-blockers, it will
            result in less daytime sleepiness.

      3)    Further weight loss will probably eliminate the few remaining
            apneas that were found on the polysomnogram.

      4)    He will be discussing these findings and planning for the
            treatment with Dr. Kernan.

12.   Dr. Kernan provided Unum with a 7/23/98 Physical Capacities          119-120
      Evaluation in which he concluded that in an 8 hour work day
      plaintiff would sit for 8 hours, stand for 8 hours, and walk for 2
      hours; could occasionally stoop, kneel, crouch, crawl, climb, lift or
      carry; could frequently push or pull and continuously balance and
      reach overhead, continuously use both of his hands for all dexterity
      and operate foot controls.  "Travel produces extreme fatigue that
      impairs function....fatigue is plausibly related to lobetalol."

5

13.     In a separate letter of the same date, Dr. Kernan also addressed     121-22
        the questions Nurse Aliberti had directed to him.  Dr. Kernan wrote:

"Since his stroke, his main difficulties have been dysartha, right leg
weakness, impaired dexterity in the right hand, and disabling
fatigability. The basis of Mr. Pasquini's claim for disability is
primarily the fatigue. His fatigability has several components. The
end of an active day, he is somnolent and physically exhausted. He
has fallen asleep while driving home on several occasions.
Although he awakens in the morning feeling reasonably refreshed
and sleeps reasonably soundly, I recently performed a sleep test
which revealed no definite evidences for sleep apnea....In the past,
Mr. Pasquini and I have noticed that his fatigability seems to be
worse on high doses of Norvasc or with beta-blocker therapy.
During periods off of beta-blocker therapy, however, his fatigability
has persisted.

"At my urging, Mr. Pasquini did return to full-time employment.
Because of fatigability, however, he found it extremely difficult to
keep up with the demands of his work schedule. As I mentioned
above, car rides in the late afternoon have proven to be unsafe. He
has been able to keep up with the expectations for his work
performance. I believe Mr. Pasquini made a valient effort to remain
at work.

"I believe that the cause of Mr. Pasquini's impaired endurance and
fatigability relate to his stroke. There is no firm evidence for sleep
apnea. Although he is currently on a beta-blocker which we are
trying to discontinue, I do not believe medications fully explain his
symptoms. He does not have the conventional criteria for
depression. To complete our evaluation for the cause of his fatigue,
Mr. Pasquini is being seen by a physiatrist and a neurologist.

6

14.   On 8/13/98 Nurse Aliberti reviewed plaintiff's file and reached made     1-3
      the following recommendation and conclusion:

      Conclusion: Fatigue is identified as the primary limited factor
      impacting his functional capacity. We have medical consensus that
      the insured's stroke and his medication's side effects are a
      component of his fatigue. Insured did attempt to return to work,
      however it was limited by his fatigue. Thus R(estrictions) &
      L(imitations) are reasonable and we would not expect significant
      improvement.  Above was discussed with outside physician, Dr.
      Charles Perakis who is in agreement.

15.   Unum completed a vocational review in this case on 8/17/98 in     134
      which it concluded that "Occupation is that of a Wholesale
      Manufacturers Rep which is classified as light requiring frequent
      talking, hearing and fingering. Driving is a material duty of the
      occupation, though duration is a variable. Walking is also a material
      duty and vision is related to the ability to travel.  The occupation
      requires the employee to investigate viable sales leads, contact and
      visit those customers to discuss their products. Walking could
      equate to 60% of the occupation."

16.   On August 24, 1998, Trisha Fornier, a Unum Disability Benefit     144-145
      Specialist, wrote to plaintiff to inform him that his application for
      long term benefits had been approved. "We are pleased to inform
      you that your request for disability benefits has been approved.
      Your first check for $3106.44 is for the period of 8/21/98 - 9/20/98."

17.   On 9/28/98 Dr. Kernan wrote to Nurse Aliberti to update her on          152-154
      plaintiff's condition.  In part, he wrote that:

      "There are no psychological diseases or problems that are causing
      Mr. Pasquini's disability. Specifically, he is not depressed and he
      does not lack motivation to work. In terms of his medical problems,
      the main problems are decreased endurance, fatigability, disarthea
      and right hemiparasis. These problems are primarily caused by the
      stroke which Mr. Pasquini experienced in 1996. It is plausible that
      physical deconditioning and medications necessary to treat his
      hypertension (Labetalol) may be contributing to some of his
      symptoms.....Mr. Pasquini is not depressed and he is not
      malingering....It is my opinion that there is no psychiatric or
      psychosocial factor that is primarily responsible for his fatigue. Mr.
      Pasquini's fatigue relates to the stroke he suffered in 1996 and the
      treatment now required to control his hypertension. We learned
      over time that the sequelae of his stroke impaired his ability to
      perform safely in his chosen occupation. It took several months for
      us all to learn this....It was not safe for him to continue in that
      occupation and he was not able to be effective in that occupation.

      "Mr. Pasquini reports that he had been falling asleep while driving
      long distances, particularly in the late afternoon. I have, therefore
      requested that he not drive long distances. The same fatigability
      that causes him to fall asleep in the late afternoons probably does
      impair his ability to perform other tasks at work, but not to the
      extent that he should refrain from attempting those tasks.

      "I have, first of all, conducted a diagnostic evaluation. He
      underwent a sleep study at Gaylord Hospital which showed no
      evidence of sleep apnea.

      "I believe that Mr. Pasquini's prognosis to return to part-time work is
      excellent. In fact, I completed a form for Continental Insurance

8

Company on 9/10/98 with Mr. Pasquini. At that time, we agreed that      152-54
he should be able to assume part-time employment on 10/1/98. I
believe that Mr. Pasquini is totally disabled to perform his prior
occupation. He maintains, however, excellent cognitive skills and
residual physical skills that would allow him to perform more
sedentary work on a part- time basis. I would not rule out the
possibility that Mr. Pasquini might be able to resume full-time work
in the distant future.

18.    On 10/26/98, plaintiff spoke with Jennifer Wheeler, a Unum         156-157
       Disability Benefits Specialist.  He told Wheeler that he "does two
       mile walk daily, then "pooped". Naps at 3pm for 2 hours. Long-
       distance driving is out, greater than one hour, passes out."

19.    As of April, 1999, Unum continued to believe that plaintiff's       196
       medication was a factor in plaintiff's fatigue.

20.    On April 21 1999, plaintiff spoke with Richard Theriault, another   197-198
       Unum Disability Benefit Specialist.  He told Theriault that:

       "Fatigue has become worse, blood pressure is under control.  If I
       lay down I sleep. If I walk 1.5 miles I'm ready for rest. ...Try to walk
       every day. Ride stationary bike everyday half an hour but ready to
       sleep when done.  Grocery shop. No hobbies really.  Used to work
       on house, but have hard time.  When do really physical things, get
       exhausted. If I drive for more than 45 minutes, I get exhausted and
       drowsy."

9

21.   On 6/14/98 by Dr. Kernan provided an updated on plaintiff's          217-218
      medical condition.  In part, he wrote:

      "Mr. Pasquini's blood pressure is under adequate control most of
      the time. He continues to have marked fatigue with effortful activity.
      He is unable to drive more than short distances because he falls
      asleep easily. He is most likely to fall asleep while driving in the
      afternoons.

      "Mr. Pasquini is restricted from working an 8 hour day which would
      require him to travel by car for the entire day. He is limited by his
      ability to maintain effortful activity throughout the day. In particular,
      he is limited by his ability to drive for more than short distances.

      "He is unable to work full-time because he is fatigued. Over the
      course of an entire day, he is unable to maintain his concentration,
      wakefulness and work pace. If he does not sleep for 1 to 1.5 hours
      during the day, he develops an attention and discomfort related to
      fatigue. Mr. Pasquini is able to work part-time. His work schedule
      would need to account for his impaired indurance and his need for
      afternoon sleep.

22.   On August 4, 1999, Theriault met with other Unum employees and       240
      concluded that "claimant's symptoms will not change and that meds
      he is on which fatigue him and a need for afternoon nap is
      reasonable."  They concluded that it would be advisable to settle
      the entirety of plaintiff's claim.

23.   On 8/16/99, Theriault spoke with plaintiff and offered him a          247-250
      settlement of $80,000. "Sounded interested wants to talk to wife."
      Theriault prepared a release and forwarded it to plaintiff.

24.   On 10/11/99 from Atty. Donna Civitello wrote to Theriault and         258-260
      demanded $145,000.00 as a counter-offer to settle plaintiff's
      disability claim.

25. On November 3, 1999, plaintiff spoke with Theriault by telephone and said, in part that his "biggest barrier with trying to work is fatigue." Regarding his attorney's counteroffer, plaintiff asked Theriault "why we did not counter offer. I explained we put a lot of work into coming up with a fair settlement and many times do not counter offer."    265-267

26. Unum received a letter sent from Dr. Stephen Huot to Dr. Kernan dated 4/23/99 in which Dr. Huot wrote:    289

    "We continue to have difficulty keeping his weight down. He eats large meals but does not snack between meals. He does exercise with a stationary bike for 1 half hour and he walks 2 hours per day. However, he continues to complain about fatigue which has worsened since his recent increase in medication. He takes naps in the afternoon. He also complains of impotence. He is interested in adjusting his medication so that he will be less troubled by impotence and fatigue. Mr. Pasquini's blood pressure is well controlled on medication, however, he is troubled by side effects."

27. Plaintiff applied for Social Security benefits on Feburary 7, 2000.    317

28. On 2/17/00, Dr. Kernan wrote again to Nurse Aliberti in which he stated, in part, that :    323
    "Mr. Pasquini has undergone a sleep study which revealed no evidence of obstructive sleep apnea and the diagnosis of narcolepsy is very unlikely....Mr. Pasquini has had persistent fatigability since his stroke in 1996....the cause of his fatigue most likely relates to both the stroke and the medications to treat his hypertension. Because of duration and persistence of Mr. Pasquini's fatigue, I cannot predict when it will resolve. When I last saw him in the office on 2/9/00, he was continuing to have fatigue, particularly after exercise. He is taking a long nap in the afternoon. He continues to be unable to tolerate long distance driving in the afternoon."

11

29.   On 3/8/00 Nurse Aliberti reviewed plaintiff's file.  She noted that       328
      "fatigue could be explained by [sequelae of] stroke, anti-
      hypertensive meds as well as Labetatol....Appears treatment is
      appropriate and insured is slowly improving with blood pressure
      under control. Part-time work capacity at this point."  She suggested
      that Unum "continue to update medical records every 3 months."

30.   Plaintiff informed Unum on 5/31/00 that he was awarded Social         336; 360-
      Security Disability Income Benefits retroactive to 5/22/98.           365

31.   Dr. Kernan provided Unum with another Physician's Disability          345-347
      Statement on 6/30/00.  In that report, Dr. Kernan indicated plaintiff
      had reached maximum medical improvement.  He also identified
      plaintiff's primary diagnosis as "stroke," and secondary conditions of
      "hypertension and overweight."  His restrictions were "heavy lifting,
      continuous activity of greater than 3 hours. Cannot work more than
      3 hours/day. Prognosis for recovery is guarded."

      Dr. Kernan wrote:  "His fatigue is directly associated with his
      physical activity. He currently requires a 1-2 hour nap daily. We
      have recently increased his lobetotol dose by 50% because his
      blood pressure is erratic and elevated. The possible interaction
      between his medications and stroke causes patient to fatigue
      easily. There is no indication that this relationship will improve
      significantly. Efforts to change his medications have failed."

      Dr. Kernan concluded that plaintiff had 3 hours of daily sedentary
      work capacity and 1 hour of light work capacity.

12

32.    On June 14, 2000, plaintiff wrote to Unum that "I nap 2 hours a day    349-351
       while still sleeping 8+ hours at night. Drowsy when I drive for an
       extended time....Wake at 5:30.  Make breakfast for my wife. Return
       to bed until 8:30. Have breakfast, shower, get dressed. Watch TV
       until 10.00.  Go for a 2+ mile walk with my dog. Return home and
       have lunch. Do house chores or TV until 2 o'clock. Take nap.
       Awake at 5 o'clock and start dinner. After dinner, go for a walk or
       watch TV. Go to bed at 9:30....Spackled a room in my home.
       However, the labor intensive work had to be spaced out to about 1-
       2 hours/day followed by a 2 hr. nap.  Felt very tired after each days
       labor....I have no plans to return to the workforce in a part or full-
       time basis. Physical exertion causes me to get fatigued and sleepy.
       I take a nap almost everyday."

33.   On 6/14/99 Dr. Kernan wrote again to Richard Theriault that:          393-394

"Mr. Pasquini's blood pressure is under adequate control most of
the time. He continues to have marked fatigue with effortful activity.
He is unable to drive more than short distances, because he falls
asleep easily. He was most likely to fall asleep while driving in the
afternoons....Currently Mr. Pasquini is restricted from working an 8
hour job which would require him to travel by car during the entire
day. He is limited by his ability to maintain effortful activity
throughout the day. In particular, he is limited by his ability to drive
for more than short distances....He is unable to work full-time
because he is fatigued. Over the course of an entire day, he is
unable to maintain his concentration, wakefulness and work pace. If
he does not sleep for 1-1 ½ hours during the day, he develops
inattention and discomfort relating to fatigue....Mr. Pasquini is able
to work part-time. His work schedule would need to account for his
impaired endurance and need for an afternoon nap....Mr. Pasquini
is able to return to part-time activities with limitations and
restrictions described above. I remain optimistic that he may
potentially, one day, be able to return to full-time activities. I cannot
tell you the precise probability of his ability to return to work full-
time."

34.   On 3/19/01, Unum notified plaintiff that Unum was beginning its          399-40
evaluation of his eligibility for benefits beyond the 36 month, "own
occupation" period.

14

35.  On June 29, 2001, Unum received the results of surveillance of        406-422
     plaintiff performed on 6/23/01 - 6/27/01 by International Claims
     Specialists. The results come in the form of a written report,
     videotapes, and still photographs of plaintiff's activities during that
     period. Among other things, the surveillance demonstrated plaintiff
     driving from Milford to Newtown and back again during an
     afternoon and evening, and sailing his boat alone out into Long
     Island Sound during two other afternoons.

36.  On 7/26/01 Deborah Cole, a Customer Care Specialist at Unum,         432
     wrote to Dr. Kernan:

     "In the past, we have paid Mr. Pasquini's claim based on his
     inability to do his prior occupation ...which requires frequent
     driving...it appears ...that his blood pressure continues to be
     controlled by medication. A sleep study was performed and there
     is no evidence of obstructive sleep apnea. You have indicated that
     in the past the claimant has reported to you severe fatigue that
     requires frequent naps and that he would only have capacity for 3
     hours of sedentary activities as well as 1 hour of light capacity per
     day. Recently we have observed Mr. Pasquini sailing his boat alone
     for several hours. He has been observed to be unfurling and
     hoisting the sail and jib as well as the other activities entailed in
     running a sailboat. We have also observed him doing yard work,
     actively walking with his dog for a few hours at a time and then
     going out and doing errands for the rest of the day. It would appear
     that Mr. Pasquini has a much greater functional capacity than you
     may have been aware of. Based on our observations of his
     activities, we believe that he would have 8 hours of sedentary to
     light capacity per day. If you do not agree with this, please provide
     us with specific additional objective information to support your
     opinion. This would include a specific diagnosis of a sickness or
     injury that would prevent him from doing a sedentary to light
     occupation."