UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIO PASQUINI : | |
|     Plaintiff, : | |
| : | 3:03 CV 1414(PCD) |
| : | |
| v. : | |
| : | |
| DESCO CORPORATION; DESCO CORPORATION : | |
| LONG TERM DISABILITY INCOME PLAN, and : | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA : | |
|     Defendants : | OCTOBER 18, 2004 |

**DEFENDANTS' REPLY AND RESPONSIVE MEMORANDUM
REGARDING THE PARTIES' MOTIONS FOR JUDGMENT ON THE
<u>ADMINISTRATIVE RECORD</u>**

**I.     INTRODUCTORY STATEMENT**

Plaintiff argues that "nothing changed" to justify Unum's decision not to extend his long-term disability benefits at the end of the thirty-six month "own occupation" period into the "any occupation" period. He is wrong. Several things occurred in the days and weeks leading up to Unum's decision: First, the definition of "disability" in the long-term disability policy changed from focusing on plaintiff's ability to perform his "own" job to his ability to perform "any" job for which he was reasonably fitted by training and experience. Second, during surveillance, plaintiff demonstrated repeatedly that he would do things that he and his doctor said he could not do safely. Third, his attending physician either could not or would not provide Unum with specific and objective medical facts to support his conclusory opinion that plaintiff was unable to perform any

occupation. In response to the arguments Unum sets forth in its opening brief, plaintiff distorts the administrative record, misrepresents medical science, and ignores well-settled law in this Circuit in his attempt to show that Unum abused its discretion by requiring him to establish his claimed restrictions and limitations by objective evidence.

II.   **SUMMARY OF THE PARTIES' POSITIONS**

   A.   **Unum's Argument in Support of its Motion for Judgment on the Administrative Record**.

Unum initially believed what plaintiff and his doctor reported to it, that the anti-hypertensive medications and the sequelae of the stroke plaintiff suffered in 1996 caused him to experience excessive daytime somnolence which, in turn, made him unable to perform the "material and substantial duties" of his "regular occupation" as a product manager of Desco Corporation. Defendant's Memo For Judgment at 7-18.[1] Unum and its medical consultants agreed that these symptoms were normal side effects of the beta-blockers plaintiff's doctors prescribed to him and that "sleepiness" was a normal side effect of a stroke. (AR 83-84, 129-130). It therefore was reasonable for Unum to believe the reports plaintiff and his doctor made that plaintiff routinely and regularly took a nap in the afternoon in order to function throughout the day (AR 110-

---

[1] During plaintiff's successful attempt to obtain benefits under the "own occupation" disability definition, he provided Unum with results of a 1998 sleep study which indicated that he did not suffer from a sleep disturbance that would otherwise explain his somnolence. (AR 147-149). In light the objective test results, Unum's reliance on the known side effects of plaintiff's medication and a stroke as causing his somnolence was reasonable.

115, 116-118, 288, 289); that driving in the late afternoon was dangerous for him because he became very fatigued, particularly during that time of day (AR 59, 60, 110-115, 119-120, 121-122, 152-154, 217-218, 323); and that he once fell asleep while driving (AR 152-154, 279-281).

Unum's assessment of plaintiff's disability changed when it began to assess plaintiff's medical condition under the "any occupation" definition in the Policy. Unum came to know that plaintiff sailed solo into Long Island Sound during the time of day in which he and his doctor said he was most likely to experience excessive sleepiness. (AR 406-422). It also learned that he drove himself and his wife long distances, again driving during what he had claimed was the most dangerous time of day for him. (AR 406-422). In light of these objective facts, Unum asked plaintiff and his treating physician to provide objective data to support plaintiff's self-described restrictions and limitations. In return, Dr. Kernan, plaintiff's attending physician, merely washed plaintiff's words through himself and reported that, according to the plaintiff, he suffered from excessive late afternoon somnolence. (AR 431-432, 433, 434-435, 437, 441-42, 444). The only objective data that plaintiff and Dr. Kernan did provide were contemporaneous sleep studies from Yale University Center for Sleep Medicine which indicated that plaintiff, now almost three years after his initial claim, was suffering from readily curable, and therefore not disabling, sleep apnea. (AR 507-514). Properly skeptical of plaintiff's self-reported symptoms, Unum commissioned a vocational analysis of plaintiff's education and employment history to determine whether plaintiff's

condition, in light of the objectively-based restrictions and limitations provided by his doctor, met the definition of "disabled." The results of that vocational analysis are self-evident. Plaintiff's extensive education and work history qualified him for several identifiable positions in the Greater New Haven area that would have provided him with an income of at least 60% of his pre-disability income within twelve months of his return to work. (AR 474-478, 566).

> **B.    Plaintiff's Arguments Against Judgment in Unum's Favor and in Support of His Motion**

In response to Unum's motion, plaintiff takes the position that Unum's decision to terminate long-term disability benefits at the start of the "any occupation" period was arbitrary and capricious. The primary focus of his attack on Unum's decision is based on his contention that Unum received no new medical information that justified it to view plaintiff's physical abilities any differently. Plaintiff's Memo at 1. Unum will address the plaintiff's specific arguments below.

3.   **THE COURT SHOULD GRANT UNUM'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND DENY PLAINTIFF'S MOTION FOR THE SAME RELIEF**

> **A.    This Court Should Follow Established Precedent and Reject the Plaintiff's Suggestion That it Apply a Sliding Scale Standard to Unum's Administrative Determination**
>
> > **1.    The Second Circuit Has Rejected a Sliding Scale Approach to Reviewing a Decision of a Conflicted ERISA**

### Administrator

The plaintiff concedes that the Policy requires the court to review Unum's decision under the "arbitrary and capricious" standard. Plaintiff's Memo at 14. Plaintiff also acknowledges that when an unsuccessful claimant asserts that an ERISA administrator was in someway conflicted, the Second Circuit has rejected suggestions that it apply a "sliding scale" approach to analyze the ERISA administrator's decision. Plaintiff's Memo at 15.[2]

Nonetheless, plaintiff argues that the court should abrogate clear precedent and apply a sliding scale approach here because of the following "facts" he claims make Unum a conflicted administrator: (1) Unum's dual status as plan administrator and plan insurer; (2) Unum's use of the same medical consultant in both the initial denial and on administrative appeal; (3) Unum's alleged "decision" to pay plaintiff long-term disability benefits until the end of the "own occupation" period, and, thereafter, pay only a percentage of its liability to plaintiff until age 65; and, (4) Unum's failure to address the Social Security Administration ("SSA") determination regarding plaintiff's claimed disability. Plaintiff's Memo at 14-17. The plaintiff argues that all these "factors" taken in combination would justify this court's abrogation of clear precedent in this Circuit and

---

[2] In this Circuit, the only less deferential standard of review that is available, *de novo* review, is applied in those cases in which "the evidence shows that the administrator was in fact influenced by such conflict." Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255-56 (2d Cir. 1996)(emphasis added).

application of a less deferential, but not *de novo*, standard of review.[3]

The Second Circuit has specifically refused to adopt the plaintiff's "sliding scale" approach. Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1254-56 (2d Cir. 1996). After deciding Sullivan, the Second Circuit has reaffirmed its determination. Whitney v. Empire Blue Cross & Blue Shield, 106 F.3d 475, 477 (2d Cir. 1997); Caidor v. Chase Manhattan Bank, 2002 U.S. App. LEXIS 2651 at *3-4 (2d Cir. 2002); Fay v. Oxford Health Plan, 287 F.3d 96, 108-109 (2d Cir. 2002); Wagner v. First Unum Life Insurance Co., 2004 U.S. App. LEXIS 11632 at *1-2 (2d Cir. 2004). This court need proceed no further in analyzing plaintiff's suggestion that it embark into a new legal area when the Second Circuit has spoken so clearly against that suggestion.[4]

Ignoring this clearly established law, the plaintiff looks for support to the Eastern District of Pennsylvania. In Dorsey v. Provident Life and Accident Insurance Co., 167 F. Supp. 2d 846, 854 (E.D. Penn. 2001), the court held that a less deferential arbitrary and capricious review should apply when the plan administrator resolved issues of coverage and paid benefits from its own funds and the same physician assessed the

---

[3] In making this argument, plaintiff admits that none of these "issues" separately or collectively demonstrate a conflict which "in fact" influenced Unum's decision. Unum's dual status clearly is permissible and will not affect the standard of review set forth in the Policy. Pulvers v. First Unum Life Insurance Company, 210 F.3d 89, 92 (2d Cir. 2000).

[4] In Sullivan, supra, the Second Circuit held that "a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists ... but that the 'conflict affected the reasonableness of the Committee's decision.'" 82 F.3d at 1255-56. Since the plaintiff has not even attempted to address that burden, the court must apply the deferential standard of review to its decision.

claim both on the initial review and on the subsequent decision on appeal. Plaintiff's Memo at 16. The holding in <u>Dorsey</u> might be facially attractive but for the fact that, as noted, the Second Circuit has directly rejected this approach.

### 2. Plaintiff's Claimed "Procedural Irregularities" Are Not Irregularities at All

While the court is obligated under settled law to reject plaintiff's request for a less deferential review of Unum's decision, and lest the court believe that Unum concurs with plaintiff's statements regarding the "serious procedural irregularities" he contends exist in the administrative record, Unum will briefly discuss those "serious procedural irregularities" below.

#### a. Unum's Advance "Decision" to Terminate Plaintiff's Benefits

Plaintiff claims that Unum's personnel maliciously decided in August 1999 that some two years later, at the end of the Policy's "own occupation" period when plaintiff would be sixty-two years old, Unum would discontinue paying full benefits and pay only a percentage of its liability until age 65 (when its obligation to pay disability benefits terminated). Plaintiff's Memo at 7-8, 16-17. In making that argument, the plaintiff refers to only one page of the administrative record, page 240, deliberately ignoring the ten pages that follow. <u>Id</u>. Examining the ignored pages demonstrates the fallacy in plaintiff's argument.

In August 1999, when plaintiff was 60 years old, Unum analyzed the possibility of settling the plaintiff's entire disability claim with him. (AR 240-250). It assessed the

following factors:  how long plaintiff would likely remain disabled; plaintiff's life expectancy; the likelihood that plaintiff might receive Social Security benefits (which would be an offset under the Policy); the possibility that medical science might in the future yield medications without the side effects of sleepiness; and the fact that, because of the plaintiff's age at application, the claim was going to be limited in duration.  Id.

After weighing and examining those factors, Unum made a settlement offer to plaintiff and plaintiff rejected the offer.  After plaintiff rejected the offer, Unum did not terminate his benefits.  It did not impose any new requirements on him.  It did it change the way it handled his claim.  It applied the Policy as it had in the past.  There is nothing "seriously wrong" with the fully-explained procedure Unum adopted.  Applying a less deferential standard of review because a plan administrator engaged in settlement discussions with a beneficiary would have the effect of discouraging ERISA resolutions, something which is directly at odds with one of ERISA's goals of  "minimiz[ing] the costs of claims settlement for all concerned."  Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993).

        b. Using the Same Physician to Review the Claim and Then Advise During the Administrative Appeal

The plaintiff next argues that Dr. Daniel Krell's involvement as a medical consultant in the initial claim denial and then the administrative appeal is a procedural

irregularity that justifies a less deferential standard.[5]  In making this argument, the plaintiff appears to rely upon the provisions of 29 CFR 2560.503-1(h)(3)(iii) and (v), and 29 CFR 2560.503-1(h)(4), which provide that on an appeal of an adverse benefits "determination that is based in whole or in part on a medical judgment," the claims procedures must provide for consultation "with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;" and must be "neither an individual who was consulted in connection with the adverse benefit determination. . . nor the subordinate of such individual." Id.

These standards became applicable to claims filed on or after January 1, 2002. *See* 65 FR 80246, 70265; and 66 FR 35886, 35887.  Plaintiff filed his claim in May 1998 and was referred for long-term disability determination in July 1998.  (AR 001-2, 062).  Unum denied his claim in August 2001, and its decision was affirmed in December 2001.  Plaintiff does not dispute that all these actions took place before the effective date of the new regulations.  (AR 481-83, 530-31).  Unum complied the regulations as they existed at the time it made its decision.

          c.      The Social Security Administration Determination

The plaintiff argues that Unum's failure to even mention the Social Security Administration's ("SSA") decision demonstrates that Unum's benefit denial was arbitrary

---

[5] Plaintiff again concedes, as he must, that "review by the same personnel who made the original decision is not in itself a basis for finding that a denial was arbitrary and capricious." Plaintiff's Memo at 33.

and capricious.  Plaintiff's Memo at 34.  Plaintiff relies solely on foreign case law to support his argument that Unum had "an obligation to articulate the specific grounds on which it distinguishes its own decision from the decision of the SSA." Plaintiff's Memo at 33.  The court should reject this position as well.

There is good reason why plaintiff relies on non-Second Circuit cases to support this argument.  Since the Social Security Administration's determination "is not binding upon a plan administrator in determining his eligibility for benefits under the plan, it cannot be said that the interpretation of the provisions of the Plan documents, pertinent to the award of long-term disability benefits, made by the defendants and applied to the plaintiff was arbitrary and capricious." Atakent v. The Prudental Insurance Company of America, 2004 U.S. Dist. LEXIS 5573 at * 21-22 (S.D.N.Y. March 31, 2004); Pagan v. NYNEX, 846 F. Supp. 19, 20 *aff'd,* 52 F.3d 438 (2d Cir.1995); Kocsis v. Standard Ins. Co., 142 F. Supp. 2d 241, 255 (D. Conn. 2001); Moats v. The United Mine Workers of America Health and Retirement Funds, 981 F.2d 685, 689 (3rd Cir. 1992)(Unless SSA standards are incorporated into the Plan, they do not bind an ERISA administrator).  There is no reason why the court should penalize Unum for not analyzing a Social Security Administration determination when that decision has no relevance under the Policy to Unum's decision.[6]

---

[6] Nor, for that matter, was Unum a party to the plaintiff's proceedings before the Social Security Administration.  Plaintiff made whatever submissions to the SSA he deemed appropriate, Unum had no input into the plaintiff's submissions to that body, and it likewise had no influence in that body's deliberative process.

>    B.   **Unum's Decision Was Within its Discretion: Surveillance Reports and Videotapes Showed Activities Inconsistent With Plaintiff's Claims, and Unum Gave Plaintiff an Opportunity to Submit Objective Evidence to Support His Subjective Restrictions and Limitations**
>
>         1.   **Unum Was Entitled to Require Plaintiff to Support His Restrictions and Limitations with Objective Evidence**

Beginning with another concession, the plaintiff readily admits that it is generally not arbitrary and capricious for a plan administrator to require objective medical evidence to support a claimant's restrictions and limitations.  Id. at 23.  He argues that here it was arbitrary and capricious, because he could not provide objective evidence that he became tired and sleepy in the late afternoon because that kind of evidence did not exist.

Plaintiff's reliance on Lemaire v. Hartford Life and Accident Insurance Company, 2003 U.S. App. LEXIS 1342 at *13 (3rd Cir. June 30, 2003), is misplaced.  Plaintiff's Memo at 21.  Like Lemaire, supra, Maniatty v. UnumProvident Corporation, et al., 218 F.Supp. 2d 500 (S.D.N.Y. 2002), aff'd, 62 Fed. Appx. 413, 2003 U.S. App. LEXIS 9383, cert. den. __ U.S. __, 157 L. Ed. 2d 310, 124 S. Ct. 431, 2003 U.S. LEXIS 7719, 72 U.S.L.W. 3280 (2003), involved a plaintiff who contended that she had chronic fatigue syndrome, among other supposed maladies, and could not provide the type of objective evidence that was required of her.  In Maniatty, Judge Rakoff recognized that an

administrator of an ERISA plan was entitled to ask for and obtain some objective medical support for the claim. He confirmed the administrator's denial of the claim in the absence of such evidence, and the Second Circuit affirmed. Unum addressed this issue in full in its opening brief at pp. 33 - 38 and will not repeat that argument again.

Further, the First Circuit in Boardman v. Prudential Insurance Co., 337 F.3d 9, 16-19 n5 (1st Cir. 2003) addressed the fallacy in the Third Circuit's Lemaire decision when it wrote, "while the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." Said another way, Unum did not require plaintiff to provide medical evidence that medically he could not provide. Rather, it was looking for something more than plaintiff's "because I say so" evidence, and it was well within its rights to do so.[7] Even in cases where diagnosis is difficult and subjective experience of pain and fatigue is the gravamen of the disease, an ERISA administrator's insistence on objective medical evidence, standing alone, is not arbitrary and capricious. Cook v. The New York Times Co., 2004 U.S. Dist. LEXIS

---

[7] Plaintiff's failure to provide objective evidence is noteworthy, particularly since there are tests that would have provided the requested objective information. For instance, in Short v. Unum Life Insurance Company of America, 2003 U.S. Dist. LEXIS 22327 at *5 (D. Conn. December 3, 2003), the plaintiff claimed she was limited in her ability to concentrate and presented Unum with neurological tests which assessed mental speed, memory, executive functioning and fine motor speed as indicators of cognitive abilities. Unum reviewed and relied on those tests and the court approved Unum's reliance. Id. at *9-13. Neurological testing is but one of many objective tests plaintiff below could have offered to show that he was unable to maintain his concentration, wakefulness and work pace in the late afternoon.

1259 at * 12-14 (S.D.N.Y. January 27, 2004). [8]  Id.

### 2. Unum Told Plaintiff and His Attending Physician That it Needed Objective Evidence to Extend Benefits but They Did Not Provide Unum with That Evidence

Plaintiff's attending physician, Walter Kernan, M.D., corresponded with Unum on several occasions both during the decision process and Unum's appellate review of the plaintiff's claim. At no time did he give Unum objective data to support his "conclusion" that plaintiff could not "work full-time because he is fatigued;" that "over the course of an entire day, he is unable to maintain his concentration, wakefulness, and work pace. If he does not sleep for 1-1½ hours during the day he develops inattention and discomfort

---

[8] In Cook, the court directly rejected the Third Circuit's analysis in Lemaire when it wrote that "[a]lthough there is no 'dipstick test' for chronic fatigue syndrome, a set of established criteria, such as those used by the C[enters for] D[isease] C[ontrol], are becoming increasingly accepted as tools in diagnosing the condition." Cook, 2004 U.S. Dist. LEXIS at * 12-14.