related to fatigue;" (AR 218) and that he could work no more than 4-6 hours per day because of subjective complaints that "with physical or mental effort, . . . he becomes extremely tired. During these periods of fatigue he is unable to keep his eyes open, unable to drive safely, and unable to concentrate and complete routine tasks" without a nap. (AR 442). Rather, knowing that Unum was asking for objective evidence to support his "conclusions," Dr. Kernan simply told Unum what plaintiff told him. Unum acted reasonably and appropriately in rejecting this evidence. See Unum's Memo at 33-38.

### 3. Plaintiff Failed to Rebut the Conclusions Unum Drew from Surveillance Even after Being Given an Opportunity to Do So

Plaintiff attempts to shift his burden of demonstrating disability onto Unum. He asserts that in rejecting his "any occupation" claim, Unum somehow assumed a burden of establishing that he was unable to perform any gainful occupation. Plaintiff claims that it somehow became Unum's burden to provide what he terms "glaring evidence that the claimant's restrictions were false" and/or medical evidence that plaintiff had a full-time sedentary work capacity before it could rely upon the results of surveillance to "terminate benefits." Plaintiff's Memo at 22-23.

Plaintiff makes this argument in order to overcome the obvious fact that neither he nor his doctor made any effort to rebut the conclusions Unum reached after reviewing the surveillance videotapes and reports with the quality of evidence to which

1

Unum was entitled. In making this argument, plaintiff fatally ignores the legal proposition that Unum at no time had any burden to prove that plaintiff was not disabled or to undertake any action on its part to assist plaintiff in shouldering his burden of proof. See, e.g., Abnathaya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 46 (3rd Cir. 1993); Wojciechowski v. Metropolitan Life Insurance Company, 75 F. Supp. 2d 256, 262-63 (S.D.N.Y. 1999), aff'd 1 Fed. Appx. 77, 2001 U.S. App. LEXIS 828 (2001); George v. First Unum Life Insurance Company, 1996 WL 701018 (S.D.N.Y. 1996). Courts have repeatedly held that "it is [perfectly] reasonable [for a plan administrator] to insist on some objective measure of claimant's capacity to work," and Unum did exactly that. See Cook, supra at * 13; Short, supra at *30-31.

### C. The Surveillance Provided Unum with Evidence That Plaintiff and His Doctor Failed to Rebut

Plaintiff contends that Unum's denial of benefits was based solely on the results of its surveillance, which, he claims, revealed nothing more than activities he previously had disclosed to Unum. Thus, so he contends, Unum did not have "substantial evidence" to justify its "termination," and therefore acted arbitrarily and capriciously in "terminating" his benefits.[1] Plaintiff's Memo at 23-25. The plaintiff argues that where "a

---

[1] As before, plaintiff again resorts to cases from outside this Circuit for his authority. Morgan v. Unum Life Insurance Co., 346 F.3d 1173, 1177-1178 (8th Cir. 2003); McOsker v. Paul Revere Life Insurance Co., 279 F.3d 586, 589 (8th Cir. 2002). Each of these cases is readily distinguishable from the present. First, unlike either of those cases, here the Policy's definition of disability was changing and the challenged decision was not to terminate benefits under the same contractual definition of

2

plan has approved benefits and then cancels them without receiving any new information," this "is evidence of an arbitrary and capricious denial." Id.  Specifically, plaintiff claims that he told Unum everything that was revealed through surveillance and, therefore, "nothing changed" to otherwise justify Unum's adverse decision. Plaintiff's Memo at 23-24.  The plaintiff's view of the record is simply wrong.

Plaintiff claims that he told Unum that "[h]e could drive for up to about forty-five minutes to an hour before needing a nap." Id.  The record, however, more accurately states what he told Unum:

- "he cannot be in the car more than an hour without falling asleep;" (AR 110-115).

- "if he drives a short period of time he can't get out of the car. looks like a little old man- stooped over. takes 15 to 20 minutes to work it out;" Id.

- "long distance driving is out"-- "greater than one hour he passes out." (AR 157).

Plaintiff's description of his activities on his sailboat was further contradicted by the surveillance.  Plaintiff may have told Unum that he "[hung] out on his boat or the

---

"disability" but to not extend them into a separately defined "own occupation" disability definition.  Cf. Morgan, 346 F.3d at 1177-1178; McOsker, 279 F.3d at 589.  Next, the court in Morgan, 346 F.3d at 1178-79, found that the surveillance did not constitute substantial evidence because it "revealed nothing new."  Here, the surveillance appeared on its face to contradict all of what Unum "knew" about plaintiff's restrictions and limitations, but Unum still gave the plaintiff and his doctor the opportunity to rebut the inference it drew from the surveillance. Cf.  Morgan, supra.

3

dock," but he also stated that he did not spend much time on it. (AR 234, 219, 611). Surveillance demonstrated that he did much more on his boat than he admitted to Unum.  On a consecutive Monday and Tuesday during a randomly-selected summer week, plaintiff sailed his boat out into Long Island Sound.  He went out in the afternoons, and when he went out he was alone.  On Monday, he was out alone for at least three hours, from 2:30PM to 5:46PM, and on Tuesday for at least one and a half hours, from 2:38PM to 4:10PM, potentially much longer.[2] (AR 409-422).  Given plaintiff's statements that over the course of the day he could not maintain concentration, wakefulness, and work pace, and his doctor's alleged restrictions on long distance travel, the administrator clearly acted within its discretion in finding that plaintiff's sailing into Long Island Sound alone in the middle of the afternoon and driving himself and his wife from Milford to Newtown and back again demonstrated behavior inconsistent with the restrictions and limitations he was claiming.  Unum acted within its discretion noting these discrepancies and plaintiff did nothing to effectively rebut those inconsistencies.

> ### D. **Plaintiff Tries but Should Not Succeed in Distracting the Court from His Conceded Failure to Provide Objective Evidence to Support His Claim**

Plaintiff attempts to obfuscate his obvious failure to provide objective evidence of

---

[2] At 4:10PM the surveillance terminated and the plaintiff had still not returned to the marina. (AR409-422).

4

restrictions and limitations by claiming that Unum did not establish a basis for rejecting plaintiff's physician's findings, and, therefore, Dr. Daniel Krell's opinion to Unum that plaintiff had sedentary work capacity was not credible. Plaintiff's Memo at 29. Plaintiff states that "Dr. Krell points to nothing...in the medical records or...administrative file that indicated that Mr. Pasquini did not suffer from afternoon fatigue and sleepiness." Id. As before, plaintiff improperly attempts to shift his burden of proof onto Unum. See, pp. 17 - 18 infra.

In making this argument, plaintiff conveniently avoids the fact that the only objective evidence he did provide to Unum actually contradicted his claim. During the administrative appellate process, plaintiff provided Unum with the results of two sleep studies he underwent in late 2001 at Yale University Center for Sleep Medicine. (AR 508-14). Taken in conjunction with the early sleep study he underwent in July 1998, (AR 166-1818), those later studies demonstrated that sleep apnea had become the probable cause of plaintiff's daytime sleepiness, and a physician at Yale Sleep Medicine clearly indicated what plaintiff could do to cure or reduce those symptoms. (AR 510).

Perhaps anticipating this response, plaintiff attacks the qualifications of Unum's medical consultant, claiming that he lacked the expertise to opine on plaintiff's work capacity and ignored the opinions of the plaintiff's treating physicians. Plaintiff's Memo at 29. On administrative appeal, Unum requested that Dr. Krell determine whether

5

plaintiff had provided objective support for his doctor's conclusory statement that he was limited to four to six hours of work capacity. (AR 529). The sleep study results that plaintiff submitted contradicted the position plaintiff and his doctor took that his alleged sleepiness was caused by his stroke and medications. Those sleep studies, which are the kind of objective evidence Unum sought and had relied upon in the past in resolving this claim, showed that plaintiff's sleepiness came from sleep apnea, something which the doctors at Yale Sleep Medicine indicated was easily reversible. Certainly, Dr. Krell was able to assess the absence of objective medical data supporting plaintiff's restrictions and limitations, particularly in light of what plaintiff's other doctors at Yale concluded based on objective data. Dr. Krell did not ignore the opinions of the plaintiff's treating physicians. Rather, based upon the results of the sleep study tests plaintiff submitted on appeal and Dr. Kernan's letter to the plaintiff dated December 5, 2001 (AR 508-514, 507), Dr. Krell concluded that plaintiff had not shown that his claimed sleepiness was caused primarily by the stroke or his medications. As the Supreme Court has made clear, an administrator has the discretion to rely upon its medical consultants over the conclusions or opinions of a treating physician. Black & Decker, *supra*.[3]

---

[3] Unum did not ignore the opinions of plaintiff's doctors. In fact, it decided to credit the objectively based opinion of one doctor over the opinion of another doctor whose opinion was not based on objective evidence. The Supreme Court expressly has held that an ERISA administrator may credit reliable evidence and reject the opinion of a claimant's treating physician without explanation. The Black & Decker

6

### IV.     PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES SHOULD BE DENIED

Plaintiff claims he should be awarded attorney's fees.  Plaintiff's Memo at 35. The seminal case in this Circuit on whether an award of attorney's fees is appropriate in an ERISA case is Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir. 1987).  The five factors set forth in that case are to be weighed, not applied as a check list.  Lauder v. First Unum Life Insurance Company, 284 F.3d 375, 383 (2d Cir. 2002); Coram Healthcare Corporation v. CIGNA, 236 F.Supp. 2d 312, 313 (S.D.N.Y. 2002); Dobson v. The Hartford Financial Services Group, Inc., 2002 U.S.Dist. LEXIS 17682, *5 (D. Conn. 2002).

Even if plaintiff is correct that Unum was wrong in its determination (which it clearly was not), he still should not be awarded attorney's fees.  First, Unum did not act "in bad faith" or reprehensively or wrongly.  Rather, following precedent in this Circuit, it demanded and failed to receive objective evidence of plaintiff's restrictions and limitations.  See Maniatty, supra at 504.  Therefore, the first prong of the Chambless analysis weighs in Unum's favor because it did not act in "bad faith," Dobson, supra at *3,  reprehensively or wrongly, Zervos v. Verizon New York, Inc. 2002 U.S. Dist. LEXIS 225051, *7, or "arbitrarily or capriciously" Juliano v. The Health Maintenance Organization of New Jersey, Inc., 2001 U.S. Dist. LEXIS 17066 * 4 (S.D.N.Y 2001) in

---

Disability Plan v. Nord, 538 U.S.822, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003). .

denying his claim. Indeed, it acted consistently with established law.

The second Chambless factor, the ability of Unum to satisfy an award of attorney's fees, is neutral. "Most courts pay little attention to the [second] factor." Zervos, supra * 7.

Plaintiff next asserts that an award of attorney's fees in this case will deter Unum from terminating benefits without any medical support. Plaintiff's Memo at 36. However, as discussed above, Unum did not act "without medical support." It acted after consulting with a medical expert who had reviewed all the submissions; and, it acted after the plaintiff had failed or refused to provide the type of medical support Unum was entitled to receive. An award of attorney's fees in this case will only subvert established precedent that plan administrators, unlike treating physicians, are not required to merely accept a claimant's subjective complaints.

Next, with respect to the relative merits of the parties' positions, plaintiff states that he has established that he is disabled under the provisions of the Policy. What the plaintiff actually asks the court to do is accept his subjective unsupported limitations, make them the judgment of the court, and then have the court substitute its judgment for that of the administrator. Under the deferential standard of review, however, the court is "not free to substitute its own judgment for that of the plan's administrator as if it were considering the issue of eligibility anew," Kocsis, at 252. . The plaintiff has failed to establish that Unum's decision "was without reason, was unsupported by substantial

8

evidence, or was erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d.Cir. 1995). There is no need to deter Unum or any other administrator from engaging in a course of conduct that has legal sanction.

Lastly, plaintiff sought benefits solely for himself. He has not conferred a common benefit on members of the plan. This factor, too, favors Unum.

In sum, the five Chambless factors are either neutral or favor Unum.

**V.    SINCE UNUM DID NOT ACT ARBITRARILY OR CAPRICIOUSLY, PLAINTIFF IS NOT ENTITLED TO PREJUDGMENT INTEREST**

Plaintiff claims he should also be awarded prejudgment interest. In so doing, he fails to provide any Second Circuit support for such a claim under ERISA §502(a)(1)(B). Plaintiff's Memo at 37-38. ERISA §502 (a)(1)(B) permits a beneficiary to bring a lawsuit "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." Interest is not a benefit specified anywhere in the plan, nor does the plaintiff attempt this argument. "[O]nly benefits specified in the plan can be recovered in a suit under §502 (a)(1)(B)." See Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 497 (7th Cir. 1999). Although in Dobson v. Hartford Financial Servs., 196 F. Supp. 2d 152, 164 (D. Conn. 2002), the court did not resolve whether prejudgment interest is properly characterized as a compensatory remedy for breach of contract, an equitable remedy, both, or an implied term of any contract for payment of money, it did recognize that courts have consistently treated prejudgment interest "as equitable

relief" and therefore "not specifically provided for in the plan."

## VI.  CONCLUSION:

For all the foregoing reasons, and for the reasons stated in its opening memorandum, Unum's Motion for Judgment on the Administrative Record should be granted; its administrative determination should be confirmed; and the complaint should be dismissed.

        RESPECTFULLY SUBMITTED,
        UNUM LIFE INSURANCE COMPANY
        OF AMERICA

By: _____
    Alexander H. Schwartz, Esq.(ct 05773)
    3695 Post Road, Suite 203
    P.O. Box 701
    Southport, CT   06480-0701
    203.255.9829
    203.255.9839 (fax)

## **CERTIFICATION**

I hereby certify that a true copy of the foregoing has been mailed this 18th day of October, 2004 to the following counsel and pro se parties:

10

David S. Rintoul, Esq.
Brown Paindiris & Scott, LLP
2252 Main Street
Glastonbury, CT 06033

                                                                                                                                                            _____
                                                                                                                                                            Alexander H. Schwartz